UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
                              :
GEORGE RUBIS, ET AL           :
                              :
                              :
v.                            :   CIV. NO. 3:11CV796 (WWE)
                              :
HARTFORD FIRE INSURANCE       :
CO.                           :
                              :
                              :
```

<u>RULING ON PLAINTIFFS' EMERGENCY MOTION FOR
PROTECTIVE ORDER **[DOC. #56]**</u>

Plaintiffs George Rubis, David Evans and Henry Barletta are three former employees of The Hartford. The allege discriminatory discharge, claiming that The Hartford laid them off because of their age. Plaintiffs' employment with the The Hartford was terminated effective March 27, 2010.

<u>Background</u>

Before the Court is defendant's Motion to Disqualify **[doc. #24]** plaintiffs' counsel, the law firm of Madsen, Prestley & Parenteau, LLC, from representing plaintiffs in this case because the firm allegedly violated Rule 4.2 of the Connecticut Rules of Professional Conduct by having ex parte communications with one of the former managers at The Hartford, Gary Kemp, who was involved in the process that led to the elimination of the three

1

plaintiffs' positions.[1]  The firm of Madsen, Prestley & Parenteau represented Gary Kemp in a separate administrative complaint of age and race discrimination that Mr. Kemp has filed against The Hartford at the Connecticut Commission on Human Rights & Opportunities ("CHRO") and the Equal Employment Opportunity Commission ("EEOC").  Mr. Kemp's employment with The Hartford was terminated on July 5, 2011.

A hearing on the Motion to Disqualify was scheduled for March 28, 2012.  On March 20, 2012, plaintiffs filed an Emergency Motion to Quash Subpoenas [doc. #43], served on plaintiffs' counsel to appear and testify at the evidentiary hearing.  Oral argument was held on March 21, 2012, and a ruling was issued on March 23, 2012, granting the Motion to Quash. [Doc. #45]. The hearing on the Motion to Disqualify was postponed to April 27, 2012, to permit defendant to depose Mr. Kemp. [Doc. ##47, 50]. The deposition is scheduled for Tuesday, April 17, 2012.

On April 6, 2012, plaintiffs filed an Emergency Motion for Protective Order to Protect Against Disclosure of Attorney Work Product. **[Doc. #56]**.  Oral argument was held on April 11, 2012.

Specifically, plaintiffs seek an order prohibiting defendant's counsel from asking questions during the deposition of Gary Kemp that will require Mr. Kemp to disclose information

---

[1]The Motion to Disqualify was referred to the undersigned by Judge Eginton on February 15, 2012.

that is protected under the attorney work product doctrine.

Motion to Disqualify

The disqualification of an attorney in order to forestall violation of ethical principles is a matter committed to the sound discretion of the district court. Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990); Hogan v. Magana, No. HDSP-134296, 2006 WL 1321282 at *2 (Conn. Super. May 9, 2006) ("The trial court has the authority to regulate the conduct of attorneys and has a duty to enforce the standards of conduct regarding attorneys.") (citing State v. Jones, 180 Conn. 443, 448, 429 A.2d 936 (1980)). When deciding a motion to disqualify counsel, a court must balance "the need to maintain the highest standards of the profession" against "a client's right freely to choose his counsel." Hempstead Video, Inc. v. Inc. Vill. of Valley Stream, 409 F.3d 127, 132 (2d Cir. 2005) (citations omitted).

In view of their potential for abuse as a tactical device, motions to disqualify opposing counsel are subject to particularly strict scrutiny. Scantek Medical, Inc. v. Sabella, 2008 WL 5210562 at *1-2 (S.D.N.Y. 2008) (internal citations omitted). Courts are reluctant to grant motions to disqualify because such motions may be tactically motivated and impinge on a party's right to employ the counsel of its choice. Id. (internal quotation and citations omitted). Finally, courts are also

reluctant to grant motions to disqualify because they inevitably result in delay and added expense. Id. (citations omitted). For all these reasons, the Second Circuit requires a high standard of proof on the part of the party seeking to disqualify an opposing party's counsel. Id. (citations omitted).

The Hartford moves to disqualify the law firm of  Madsen, Prestley & Parenteau, LLC pursuant to District of Connecticut Local Rule 83.2(a) and Connecticut Rules of Professional Conduct, Rule 4.2 ("Communication with Person Represented by Counsel").[2] Mr. Kemp was allegedly involved in the reduction in force that led to the termination of plaintiffs' employment in March 2010.

---

[2]Rule 4.2 of the Rules of Professional Conduct states,

> In representing a client, lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

The commentary to Rule 4.2 addresses its application with respedct to organizational parties, and provides, in relevant part,

> In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.

Kemp's employment was terminated in July 2011 and he later retained Madsen, Prestley & Parenteau, LLC., who no longer represent him.  Mr. Kemp has retained new counsel who will be present during his April 17 deposition.

Interviewing Former Corporation Employees

> Although an adverse attorney has a right to interview <u>former</u> employees of a corporation, the attorney is obliged voluntarily to stop short of any inquiry into matters that he or she, as an attorney, knows may be privileged but that the lay employee may not. Most courts have found that Rule 4.2 does not generally bar ex parte contacts with former employees; however, it proscribes inquiry by opposing counsel into matters subject to the attorney-client privilege.

1 Edna Selan Epstein, The Attorney-Client Privilege and the Work Product Doctrine, at 785 (5th Ed. 2007) (emphasis added). The language of Rule 4.2 does not expressly prohibit ex parte contact with former employees of a corporate party.  The comment to the Rule prohibits communications by a lawyer for one party concerning the matter in representation with: (a) "persons having a managerial responsibility on behalf of the organization," and (b) "with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil . . . liability;" or (c) "whose statement may constitute an admission on the part of the organization."  "The first and third characteristics do not apply to <u>former</u> employees since, by definition, they no longer have managerial responsibility and

5

their current statements would not constitute admissions . . . of the former employer." <u>Serrano v. Cintas Corp.</u>, Civil Action No. 04-40132, 2009 WL 5171802, at *1 (E.D. Mich. Dec. 23, 2009).  One court has held, however, that "the second classification is not expressly limited to present acts or omissions, and may well include former employees." <u>Id.</u>

The ABA, in ABA Formal Opinion 91-359, issued March 22, 1991, concluded that Rule 4.2 does not prohibit communications with former employees of a defendant corporation as long as the former employees are not in fact represented by the corporation's attorney.  ABA Formal Opinion 91-359 (March 22, 1991) ("[I]t is the opinion of the committee that a lawyer representing a client in a matter adverse to a corporate party that is represented by another lawyer may, without violating model Rule 4.2, communicate about the subject of the representation with an unrepresented former employee of the corporate party without consent of the corporation's lawyer.").  It is undisputed here that Mr. Kemp is not represented by The Hartford and was not employed when he retained the law firm of  Madsen, Prestley & Parenteau, LLC.

> The opinion recognized that although persuasive policy arguments can be and have been made for extending the ambit of Model Rule 4.2 to cover some former corporate employers, the fact remains that the text of the Rule does not do so and the comment gives no basis for concluding such coverage was intended.
>
> . . .

6

> Most courts thus allow ex parte interviews of
> former employees and do not mandate
> proceeding either by way of deposition or
> with notice to an adversary.

1 Edna Selan Epstein, The Attorney-Client Privilege and the Work Product Doctrine, at 785 (5th Ed. 2007) (citing cases); see Bryant v. Yorktowne Cabinetry, Inc., 538 F. Supp. 2d 948, n.2 (W.D. Va. 2008) (noting criticism of cases holding that "contacts should be prohibited where the former employees' acts or omissions may be imputed to the corporation" in favor of the March 1991 ABA formal opinion regarding Model Rule 4.2 that does not bar ex parte communication with former employees.)(citing cases); United States v. W.R. Grace, 401 F. Supp. 2d 1065, 1069 (D. Mont. 2005) ("[n]either the text nor the comments of Model Rule 4.2 make any effort to distinguish between former managerial employees and former 'lower echelon' employees.").

A minority of courts, however, have applied Rule 4.2 to former employees in certain situations, such as where the former employee was a member of an organization's management or control group, or where the former employee had privileged or confidential information, or where the conduct of the former employee could have been imputed to the employer. Serrano, 2009 WL 5171802 at *2-3 (internal citations omitted). The Court in Serrano acknowledged that, "the majority of courts have accepted the ABA Committee position that Rule 4.2 simply does not apply to ex parte contacts with an opposing party's former agents, despite

the Committee's admission that persuasive policy arguments exist for extending it to at least some former employees." In <u>Serrano</u>, counsel for the Equal Employment Opportunity Commission ("EEOC") filed a Motion for Leave to Interview the Former Decision Makers Outside the Presence of Defense Counsel, but refused to identify the former defendant employees. The Magistrate Judge wrote, "In the absence of a showing that the potential witnesses were not members of [defendant's] management group, and that they were not privy to confidential or privileged information, I am unable to conclude that Rule 4.2 is totally inapplicable." <u>Id.</u> at *2 (emphasis added). The court then granted the EEOC's motion, but stated that the ex-parte interviews were to be conducted in accordance with certain guidelines. This "more nuanced approach" directed counsel to, among other things, advise the former employee to avoid disclosure of privileged materials; not solicit privileged information and terminate the conversation should it appear that the interviewee might reveal privileged matters; and instruct the former employee not to disclose information covered by defendant's attorney client privilege, or matters subject to confidentiality agreements between the former employee and defendant. <u>Id.</u> at *4-5; <u>but</u> <u>see</u> <u>Clemons v. City of Detroit</u>, (distinguishing <u>Serrano</u> on its facts, where both parties knew the identity of the former employee and former position and, during oral argument, both parties conceded that she was an "important"

official, and the defendant did not allege that the former employee was involved with Clemons' termination, or that she possessed any confidential or privileged information regarding Clemons' termination. The Court found that under these facts, the ex parte interview did not violate Rule 4.2).

Plaintiffs seek an order prohibiting defendant's counsel from asking questions during the deposition of Gary Kemp that will require Mr. Kemp to disclose information that is protected under the attorney client work product doctrine. Plaintiffs emphasize that Mr. Kemp did not make the decisions to terminate plaintiffs' employment and does not possess any privileged information or work product regarding defendants' defense against plaintiffs' claims. They further argue that defendant has not demonstrated that trial of this matter will be tainted as a result of any communication between plaintiffs' counsel and Mr. Kemp. Moreover, The Hartford is now an adversary to Mr. Kemp in his employment discrimination claims.

Without deciding the motion to disqualify at this time, and considering the nuanced approach counseled in Serrano at the deposition stage, the Motion for Protective Order **[Doc. #56]** is GRANTED, to the extent that counsel may not inquire at the deposition about communications Mr. Kemp had with Madsen, Presley & Parenteau, LLC, concerning his involvement in the termination of these plaintiffs. There is no claim that Mr. Kemp possesses

either privileged or confidential information concerning plaintiffs' claims. The Hartford may inquire whether its former employee Gary Kemp has communicated to plaintiffs' counsel knowledge that may support a claim of discriminatory pattern and practice beyond his involvement in the termination of plaintiffs. A fair subject of inquiry includes Mr. Kemp's past involvement in reduction in force initiatives and/or termination of others' employment, conversations with The Hartford's lawyers, his access to confidential and/or privileged materials, and specific litigation strategies in other cases.  The Hartford's counsel may inquire by naming employees and/or the lawsuit, or describe the litigation so that Mr. Kemp will be able to recall his involvement and counsel can determine whether Kemp has specific privileged and/or confidential information that could prejudice The Hartford in this lawsuit. At this time, defendant has only speculated that Mr. Kemp was exposed to privileged/confidential information during his employment that could prejudice The Hartford in this lawsuit.

This case is complicated by the fact that Mr. Kemp is now an adverse party to The Hartford, bringing his own wrongful discharge claim against his former employer.  Fortunately, his own counsel will be present at the deposition.  Counsel are encouraged to contact chambers if there is an objection to a question that requires clarification or guidance from the Court.

This is not a recommended ruling.  This is a discovery ruling and order which is reviewable pursuant to the "clearly erroneous" statutory standard of review.  28 U.S.C. § 636 (b)(1)(A); Fed. R. Civ. P. 6(a), 6(e) and 72(a); and Rule 2 of the Local Rules for United States Magistrate Judges.  As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

SO ORDERED at Bridgeport this 16th day of April 2012.


___/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE